IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JUSTINA HURST, | CASE NO. 5:25-cv-2153 |
| Plaintiff, | DISTRICT JUDGE |
| | PAMELA A. BARKER |
| vs. | |
| COMMISSIONER OF SOCIAL SECURITY, | MAGISTRATE JUDGE |
| | JAMES E. GRIMES JR. |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Justina Hurst filed a complaint against the Commissioner of Social Security seeking judicial review of the Commissioner's decision denying her applications for disability insurance benefits and supplemental security income. Doc. 1. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Court referred this matter to a Magistrate Judge under Local Rule 72.2(b)(1) for the preparation of a Report and Recommendation. Following review, and for the reasons stated below, I recommend that the District Court affirm the Commissioner's decision.

**Procedural background**

In December 2022, Hurst filed applications for disability insurance benefits and supplemental security income alleging a disability onset date of

April 1, 2022.[1] *See* Tr. 258–275. In pertinent part, Hurst claimed that she was disabled and limited in her ability to work due to: lupus, rheumatoid arthritis, fibromyalgia, antiphospholipid syndrome, depression, anxiety, and asthma. *See* Tr. 324. The Commissioner denied Hurst's applications initially and on reconsideration. *See* Tr. 88, 100, 110, 124.

In March 2024, Hurst requested a hearing. Tr. 156. In October 2024, Administrative Law Judge ("ALJ") Patricia McCay held a telephonic hearing. *See* Tr. 44–87. Hurst appeared, testified, and was represented by counsel at the October 2024 hearing. Tr. 50–78. Qualified vocational expert Allison Barry also testified. Tr. 78–85. Later in October 2024, the ALJ issued a written decision finding that Hurst was not entitled to benefits. Tr. 23.

In November 2024, Hurst appealed the ALJ's decision to the Appeals Council. *See* Tr. 251. In August 2025, the Appeals Council denied Hurst's appeal, making the ALJ's October 2024 decision the final decision of the Commissioner. Tr. 1; *see* 20 C.F.R. § 404.981.

Hurst timely filed this action in October 2025. Doc. 1. In it, she presents one issue for review:

> Did the Administrative Law Judge (ALJ) commit
> errors at step four evaluating medical opinion

---

[1]  "Once a finding of disability is made, the [agency] must determine the onset date of the disability." *McClanahan v. Comm'r of Soc. Sec.*, 193 F. App'x 422, 425 (6th Cir. 2006).

evidence, and subsequently in crafting the residual functional capacity.[2]

Doc. 6, at 1.

**Evidence**[3]

*Personal and Vocational Evidence*

Hurst was born in January 1984 making her approximately 38 years old on the alleged onset date. Tr. 332. She obtained at least a high school education. Tr. 325.

*Medical Evidence*

The ALJ summarized the medical evidence as follows:

> Notes from March 2024 find the claimant reporting she had had no syncope, weakness, light-headedness (i.e., dizziness), or shortness of breath (10F/15).2 There is no indication the claimant had had any difficulty standing, walking, or lifting/carrying. She presented as normal and in no acute distress (Id. at 18). She was not ill-appearing (Id.). She had no swelling, no neurological deficits, and she was fully oriented with no indication of fatigue (Id. at 18-19). The claimant was noted to be locally employed with good access to medical care and a moderate amount of life stress associated with job and kids (Id. at 22). Of note, while the claimant alleges disability, there is no indication of any stress related to her health.

---

[2]    A residual functional capacity (RFC) is an "assessment of" a claimant's ability to work, taking his or her "limitations … into account." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Circ. 2002). Essentially, it is the Social Security Administration's "description of what the claimant 'can and cannot do.'" *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 631 (6th Cir. 2004) (quoting *Howard*, 276 F.3d at 239).

[3]    The recitation of evidence is not intended to be exhaustive and is generally limited to the evidence cited in the parties' briefs and relevant to their arguments.

The herein assessed residual functional capacity reasonably accounts for any pain, fatigue, or dizziness the claimant may have by limiting her to work of a light nature with reduced (or eliminated, i.e., no climbing ladders) postural activity, an avoidance of hazards, reduced fine and gross manipulation (e.g., no constant use of hands for such), and work that involves simple instructions in a non-production pace environment with no more than occasional interactions. The residual functional capacity also accounts for asthma even though the claimant is noted to an every day smoker (10F/45).

Notes at Exhibit 11F reveal the claimant failed to follow-up with rheumatology for some time and the claimant reestablished contact asking to be placed back on Plaquenil (11F/20). She indicated that she was beginning to really feel the effects of being off Plaquenil (Id.).

A March 2023 questionnaire indicates the claimant was independent with all facets of daily activities, including home management (laundry, cleaning, chores, simple meal prep) (12F/46).

The claimant was noted to be mildly obese with a BMI of 32 (Id. at 47).3 The claimant reported that Plaquenil helped with fatigue and that Suboxone was "helping a lot" (Id. at 50). Though she continued to have significant subjective complaints, objective clinical findings indicate the claimant presented as well appearing, alert (i.e., no fatigue), comfortable, in no acute distress, and well nourished (Id. at 52). She had clear lungs, supple neck, and a normal motor and sensory exam with a normal gait, normal power/strength, and normal coordination (Id.). The claimant had entirely normal musculoskeletal findings (Id.). Imaging showed unremarkable bilateral hands (Id. at 53). The rheumatologist indicated that the claimant does not meet the criteria for lupus and that most of her reported symptoms were consistent with fibromyalgia (Id. at 54). The claimant was advised to continue Plaquenil (Id.). The dosage of Plaquenil is noted to be the same

4

> in 2023 as it is in 2024 (200mg twice per day) (Id. at 55; Compare at 10F/10).
>
> Also in March 2023 (approximately one year out from her alleged onset date), the claimant reported no history of falling or any need for an ambulatory assistive device (12F/79). She had had no pain (Id.).
>
> In February 2023, the record indicates the claimant was doing medical transport driving for an occupation (12F/132). She presented as alert and with a normal appearance (Id. at 134).

Tr. 34–35.

*Opinion Evidence*

The ALJ explained her consideration of the consultative examiner's

opinion as follows:

> The consultative examining opinion is supported by the examiner's clinical examination and interview. It is also consistent with the state agency assessments and the claimant's treatment history, which indicates decent symptom control with a regimen of outpatient medication management. The undersigned accordingly finds the state agency and consultative examining opinions to be persuasive. The undersigned has, however, provided some additional limitations regarding the claimant's physical residual functional capacity: the herein assessed residual functional capacity eliminates the climbing of ladders, ropes, and scaffolds, and it includes a limitation to no more than frequent (i.e., no constant) gross and fine manipulation. Lastly, an avoidance of concentrated exposure to heat and humidity was included by the state agency at 8A/8 because of moderate persistent asthma. The undersigned declines to adopt such avoidance and notes that including such would not result in any significant erosion of jobs available.

Tr. 35–36

Additionally, the ALJ discussed her consideration of the consultative examiner's opinion in connection with the Paragraph B criteria.[4] In relevant part, the ALJ explained that:

> In interacting with others, the claimant has a moderate limitation. The state agency mental health consultants opine that the claimant has some moderate limitation in interacting with others (1A, 4A, 5A, 8A). The undersigned agrees. While the claimant indicates she has no problems getting along with others and that she regularly spends time with others video chatting or talking on the phone, she tends to shy away from social situations (5E). The consultative examiner notes, "the claimant struggles with social phobia. Her anxiety was evidenced throughout the [examination]" (10F). Clearly, the record contains no support for any marked or extreme limitation in the ability to interact with others. Though brief, the undersigned notes that the claimant displayed no difficulty interacting with the undersigned while testifying at the hearing. The herein assessed residual functional capacity accounts for some moderate limitation in interacting with others by limiting her to no more than occasional interactions with supervisors, co-workers, and the general public.
>
> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The state agency mental health

---

[4] These criteria have to do with the "listings," which are found at 20 C.F.R Part 404, Subpart P, App. 1, and are a catalog of disabling impairments organized by "body systems." Listings 12.04 and 12.06 listings contain three paragraphs—A, B, and C. To satisfy either listing, a claimant must satisfy the requirements in paragraphs A and B or paragraphs A and C. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2). To satisfy the paragraph B criteria, the claimant must have an "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting and managing oneself. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(A)(2)(b).

consultants opine that the claimant has some moderate limitation with regard to concentrating, persisting or maintaining pace (1A, 4A, 5A, 8A). The undersigned agrees. As noted above, the consultative examiner notes that the claimant, "processes slowly, but is persistent and able to complete complex and simple tasks" (10F). The claimant notes that she has a tendency to no finish things she starts and that she has a limited attention span (5E). Nevertheless, she is good at following written instructions and fair at following spoken instructions (Id.). She is able to count change, use a computer to shop for essentials, and prepare meals daily (Id). As with the above, marked, or extreme limitation is simply not supported on this record. The herein assessed residual functional capacity accounts for some moderate limitation in concentrating, persisting or maintaining pace by limiting the claimant to work that entails only simple instructions and that is not of a production pace.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The state agency mental health consultants opine that the claimant has a moderate limitation in the ability to adapt and manage herself (1A, 4A, 5A, 8A). The undersigned agrees. The consultative examiner notes that the claimant has good insight and support with a good prognosis (5F). The claimant is able to manage her own finances (Id.). Nonetheless, the examiner reasonably notes that the claimant's mental health symptoms would likely increase with increased stress (Id.). This assessment is very reasonable and has been taken into consideration in assessing the claimant's residual functional capacity. The herein residual functional capacity reduces the stress level of the work by limiting the work to simple instructions in a non-production pace environment that has no more than occasional changes in setting or routine. Further, interactions with others is limited to an occasional basis. This file clearly reflects the claimant's admirable ability to adapt and manage in the face of her impairments.

7

> She shops by computer, prepares meals, she maintains hygiene and appointments without reminders, and she is able to operate a motor vehicle (5E).

Tr. 30–31.

### The ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2023.

2. The claimant has not engaged in substantial gainful activity since April 1, 2022, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: undifferentiated connective tissue disorder/antiphospholipid syndrome/fibromyalgia/lupus/rheumatoid arthritis; degenerative disc disease (lumbar spine); obesity; asthma; depressive disorder; and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.926 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b) and 416.967(b) with the following additional limitations: occasional climbing of stairs; no climbing ladders, ropes, and scaffolds; occasional crouching, crawling, kneeling, stooping/bending and occasional balancing as defined in the SCO; avoid workplace hazards such as dangerous moving machinery and unprotected heights; avoid continuous exposure to pulmonary irritants; frequent use of bilateral upper extremities for grasping/gross manipulation and finger/fine manipulation; she can understand, remember, and carry out simple instructions; she can handle occasional changes in work setting or work routine; she is not able to perform work requiring a specific a work production-rate, such as assembly line work or work that requires hourly quotas; and she is limited to occasional interactions with supervisors, coworkers, and the general public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 5, 1984 and was 38 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

9

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant number sin the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11.    The claimant has not been under a disability, as defined in the Social Security Act, from April 1, 2022, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 28–37.

**Standard for Disability**

Eligibility for social security benefit payments depends on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

An ALJ is required to follow a five-step sequential analysis to make a disability determination:

1.    Is the claimant engaged in substantial gainful activity? If so, the claimant is not disabled.

2.    Does the claimant have a medically determinable impairment, or a combination of impairments, that is "severe"? If not, the claimant is not disabled.

10

3. Does the claimant's impairment meet or equal one of the listed impairments and meet the duration requirement? If so, the claimant is disabled. If not, the ALJ proceeds to the next step.

4. What is the claimant's residual functional capacity and can the claimant perform past relevant work? If so, the claimant is not disabled. If not, the ALJ proceeds to the next step.

5. Can the claimant do any other work considering the claimant's residual functional capacity, age, education, and work experience? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. §§ 404.1520, 416.920; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008). Under this sequential analysis, the claimant has the burden of proof at steps one through four. *Jordan*, 548 F.3d at 423. The burden shifts to the Commissioner at step five "to prove the availability of jobs in the national economy that the claimant is capable of performing." *Id*. "The claimant, however, retains the burden of proving her lack of residual functional capacity." *Id*. If a claimant satisfies each element of the analysis and meets the duration requirements, the claimant is determined to be disabled. *Walters Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

**Standard of Review**

A reviewing court must affirm the Commissioner's conclusions unless it determines "that the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record."

11

*Jordan*, 548 F.3d at 422. "'[S]ubstantial evidence' is a 'term of art'" under which "a court … asks whether" the "existing administrative record … contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citations omitted). The substantial evidence standard "is not high." *Id.* at 103. Substantial evidence "is 'more than a mere scintilla'" but it "means only[] 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citations omitted). The Commissioner's "findings … as to any fact if supported by substantial evidence [are] conclusive." 42 U.S.C. § 405(g); *Biestek*, 587 U.S. at 99.

A court may "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Even if substantial evidence or a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice within which" the Commissioner can act, without fear of judicial "interference." *Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 605 (6th Cir. 2009) (quoting *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994)).

**Discussion**

Hurst seemingly presents one issue for review—that "Remand is required for the ALJ's failure to reconcile the RFC with the consultative

examination opinion after finding it persuasive." Doc. 6, at 7. The Court uses the word "seemingly" because Hurst's argument is not entirely clear. For starters, the argument heading provided in the body of her brief differs from the issue stated at the outset. *Compare* Doc. 6, at 1 *with id.*, at 7. And despite providing just one legal issue for review, Hurst's argument suggests that her argument is two-fold: (1) the ALJ failed to properly evaluate the consultative examiner's opinion, *see* Doc. 6, at 8 (citing the regulations governing an ALJ's consideration of opinion evidence) and (2) the ALJ failed to properly account for the examiner's opined limitations in Hurst's RFC determination, *see* Doc. 6, at 8–9 (citing cases examining whether and when limitations from a medical opinion should be included or discussed in relation to the ALJ's RFC findings). Both of these apparent arguments are discussed in turn.

Additionally, Hurst states that she is challenging only the ALJ's evaluation at Step Four. *Id.* at 1. Hurst thus has to show in the first instance that the ALJ erred or that her decision is not supported by substantial evidence. *See Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Turning to Hurst's first argument, despite introducing her argument by asserting that ALJ failed to properly evaluate the consultative examiner's opinion under the requirements of 20 C.F.R. § 404.1520c, review of the substance of her argument section indicates that she does not dispute whether the ALJ's evaluation of opinion evidence complied with that regulation. *See* Doc. 6, at 8–10.

13

The Commissioner is required to evaluate the persuasiveness of all medical opinions using the following factors: supportability; consistency; treatment relationship, including the length, frequency, purpose, and extent; specialization; and other factors. 20 C.F.R. §§ 416.920c(a), (c)(1)–(5), 404.1520c(a), (c)(1)–(5).[5] Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(a). Supportability means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[] … the more persuasive the medical opinions … will be." 20 C.F.R. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion[] … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] … will be." 20 C.F.R. § 416.920c(c)(2). The Commissioner must explain the supportability and consistency factors when discussing a medical opinion. 20 C.F.R. § 416.920c(b)(2). "[A]n ALJ need not," however, "specifically use the terms 'supportability' or 'consistency' in his analysis." *Cormany v. Kijakazi*, No. 5:21-cv-933, 2022 WL 4115232, at *3 (N.D. Ohio Sept. 9, 2022) (citing cases). The Commissioner is not required to discuss the remaining factors. *Id.* "A reviewing court evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the

---

[5]     The regulations governing the evaluation of disability insurance benefits and supplemental security income are found at 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, respectively, and are identical for purposes of this case.

14

persuasiveness of a medical opinion." *Toennies v. Comm'r of Soc. Sec.*, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (internal quotation marks and citation omitted).

Here, the ALJ provided the requisite supportability and consistency analysis with regard to the consultative examiner's opinion. *See* Tr. 35–36. The ALJ explicitly stated that the consultative examiner's opinion is persuasive because it is "supported by the examiner's clinical examination and interview" and "consistent with the state agency assessments and the claimant's treatment history[.]" *Id.* at 36. Hurst provides no developed argument that the ALJ failed to properly articulate her evaluation of the consultative examiner's opinion as required by the regulations. Indeed, after her introduction, she does not cite any applicable regulation related to the evaluation of opinion evidence. So she has forfeited any argument, to the extent he is even attempting to raise one, that the ALJ failed to apply applicable regulations for evaluating the persuasiveness of opinion evidence. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997).

The second facet of Hurst's argument amounts to a disagreement with the ALJ's decision not to use the verbatim language used by the consultative examiner. *See* Doc. 6 at 10–11. Specifically, Hurst notes that the ALJ found persuasive the opinion of consultative examiner Nena Kircher, Psy. D. *Id.* at 9. She takes issue with the ALJ's alleged failure to account for all the mental limitations assessed by Dr. Kircher relating to Hurst's ability to handle stress.

*Id.* at 9–10. Hurst, however, does not provide any citation to support the idea that the ALJ was required to adopt Dr. Kircher's specific language regarding Hurst's ability to handle stress. *See id.* at 10. Instead, she asserts that the ALJ was obligated to "reconcile" the alleged conflict between Dr. Kircher's language and the ALJ's chosen language. *Id.* at 11. But, beyond simply claiming that there is a conflict, Hurst does not point to anything to show that the ALJ's chosen language conflicted with Dr. Kircher's language.

Nevertheless, Hurst claims that the ALJ "needed to either include [Dr. Kircher's] limitations or explain why she rejected them." Doc. 6, at 11. But Hurst has misinterpreted the ALJ's decision. For starters, the ALJ did not "reject" Dr. Kircher's limitations. The ALJ simply used different language and, in fact, explained how the RFC contemplated the mental limitations from the consultative examiner's opinion. *See* Tr. 30–31. Specifically, as to the Hurst's ability to handle stress, the ALJ identified that Dr. Kircher "reasonably note[d] that [Hurst's] mental health symptoms would likely increase with increased stress" and explained she took this fact into consideration when crafting the RFC. Tr. 31. To this end, the ALJ explained that the RFC "reduces the stress level of the work by limiting the work to simple instructions in a non-production pace environment that has no more than occasional change in setting or routine. Further, interactions with others is limited to an occasional basis." Tr. 31. Hurst fails to show that the ALJ's explanation amounted to error. Indeed, the ALJ was not required to include, verbatim, the consultative

16

examiner's opinion in her RFC determination. *See Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019) ("No bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding"); *see also Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) ("The ALJ is required to incorporate [in the RFC] only those limitations that he or she accepted as credible.").

Beyond a passing comment that "the RFC and decision as a whole [are] not supported by substantial evidence" as a result of the ALJ's failure to include verbatim limitations, Doc. 6, at 11, Hurst does not develop any argument regarding whether the ALJ's decision is supported by substantial evidence or offer any support for her conclusory comment. To the extent that Hurst raises her substantial evidence argument in a conclusory manner, that point is waived. *See McPherson*, 125 F.3d at 995. Additionally, to the extent that she may be implying that substantial evidence may support greater or different limitations, that assertion would be irrelevant because the fact that substantial evidence might support different outcomes is not a basis to reverse. *See Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997) ("The decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ."); *see also Walters v. Comm's of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (explaining that a claimant bears the burden of proof for the first four steps of the sequential

17

evaluation and that the denial of a claim at steps one through four is proper unless a claimant can show the absence of substantial evidence to support the Commissioner's decision).

Lastly, Hurst makes the conclusory claim that the ALJ failed to address her ability to handle stress with the vocational expert during the hearing. Doc. 6, at 11. This claim is not only conclusory, meaning that the Court need not consider it, *see McPherson*, 125 F.3d at 995, but it is also belied by the record, *see* Tr. 79 (discussing jobs available to a hypothetical individual with the same RFC limitations as Hurst). So this conclusory argument it lacks any merit. As to the ALJ's questioning of the vocational expert, the ALJ used the RFC language she ultimately adopted which, as discussed above, accounted for Hurst's ability to handle stress.

### Conclusion

For all of the reasons stated, I recommend that the Court affirm the Commissioner's decision.

Dated: May 13, 2026

> */s/ James E. Grimes Jr.*
> James E. Grimes Jr.
> U.S. Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–531 (6th Cir. 2019).